IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

1:21 CV464

Sherman Lamont Fields

V.

DIRECTOR (FBOP)
    and
DIRECTOR HEALTH SERVICES
    and
WARDEN USP BEAUMONT
    And
WARDEN USP TERRE HAUTE
    And
WARDEN JOHN GILLEY
    And
COUNSELOR BOUCOARD
    And
OFFICER ELLIOTT
    and
REGIONAL DIRECTOR
    and
JOHN DOE(S)

AMENDED COMPLAINT

PLAINTIFF'S AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND PUNITIVE AND COMPENSATORY DAMAGES DUE TO ILLEGAL AND UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT. WITH A JURY TRIAL DEMAND.

COMES NOW Plaintiff Sherman Lamont Fields, pro se, and submits his complaint, and in support thereof states the following:

## PRELIMINARY STATEMENT

1). At or about mid 2021 the Plaintiff, Sherman Lamont Fields filed an original complaint Articulating numerous Constitutional violations; to wit: Deliberate indifference to serious medical needs; Denial of access to Court and Counsel, and tampering with confidential legal mail; theft of personal property; violations of due process; Cruel and Unusual punishment; and Equal protection violations. Later an Addendum was filed setting forth factual Allegations of harassment; retaliatory transfer; and criminal Assault.

2). At or about late 2023 Mr. Fields filed a motion Asking the Court to Allow an Amended Petition. The Court granted the motion. However, due to the governments continued tampering with confidential legal mail Mr. Fields Just received the Court Order granting the motion in mid October 2024. This Petition stems from that Order.

## THE PARTIES

3). Plaintiff Sherman Lamont Fields has been incarcerated in the Federal Bureau of Prisons or (FBOP) since early 2002. Plaintiff brings this Complaint pursuing legal, administrative and any other appropriate remedies to ensure the protection of his physical person and his Constitutional rights while he is an inmate in the (FBOP), pursuant to <u>Bivens v. Six Unknown Named Federal Agents</u>, 450 U.S. 388 (1971), 42 U.S.C. § 1983, 42 U.S.C. § 1985, the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Mr. Fields is seeking a Jury trial to address the issues herein.

4). Defendant, Warden USP Beaumont (herein above defined as representing the United States Penitentiary for Federal Prisoners). Defendant Warden is responsible for the day-to-day operations of USP Beaumont. He, in conjunction with the Agents and Employees at USP Beaumont that are under his supervision and control, Establishes and implements conditions, practices and policies of the prison relating to medical care and security. Defendant Warden is ultimately responsible for ensuring that the prison operates its service(s) in conformity with the Constitutions of the United States and Federal laws. Defendant Warden is sued herein, both in her official and personal capacity as Warden of USP Beaumont.

5). Defendant, Warden USP Terre Haute (hereinabove defined as representing the United States Penitentiary for Federal Prisoners). Defendant Warden is responsible for the day-to-day operations of USP Terre Haute. He, in conjunction with the Agents and Employees at USP Terre Haute that are under his supervision and control,

2

establishes and implements conditions, practices and policies of the prison relating to inmate property, medical care and security. Defendant Warden is ultimately responsible for ensuring that the prison operates its service(s) in conformity with the Constitutions of the United States and Federal laws. Defendant Warden is sued herein both in his/her official and personal capacity as Warden of USP Terre Haute.

6). Defendant, Warden John Gilley. (herein above defined as representing the United States Penitentiary(s) for Federal Prisoners). Defendant Gilley was responsible, at all times relevant for the day-to-day operations of USP Hazelton and USP McCreary, and he is currently responsible for the day-to-day operations of USP LEE. He, in conjunction with the agents and employees at USP Hazelton, USP McCreary, and USP LEE that were/are under his supervision and control establishes and implements conditions, practices and policies of the prisons(s) relating to inmate safety, medical care and security. Defendant Gilley was/is ultimately responsible for ensuring that the prison(s) operates its services(s) in conformity with the Constitutions of the United States and Federal laws. Defendant Gilley is sued herein both in his official and personal capacity as the Warden of USP Hazelton, USP McCreary and USP LEE.

7). Defendant, Director Federal Bureau of Prisons is "the Director" of the (FBOP). The defendant bear final responsibility for the treatment, care and custody of Federal inmates throughout the entire (FBOP); (i.e). USP Beaumont, USP Terre Haute, USP Hazelton,

USP McCreary, and USP LEE. She is also responsible for the Administrative hearing (grievance) process that Plaintiff have attempted to participate in as to the claims herein. The Defendant "Director" is sued herein both in her official and personal capacity as the Director of the (FBOP).

8). Defendant, Director of Health Services is the Director of the Health Services Division of the (FBOP). As the Director he/she oversees the Health Services provided to federal inmates in (FBOP) facilities, including health care, infectious disease and more. The Division also coordinates the BOP's safety Program (Occupational Safety Environmental Health, and Life Safety and Fire Protection), which ensures a safe, healthy environment for staff and inmates. The Defendant, Director of Health Services is sued herein both in his/her official and personal capacity as the Director of Health Services for the (FBOP).

9). Defendant "Baugaard" is a Counselor at USP Beaumont. As a counselor, he counsels, work with and disciplines inmates. He is responsible for the humane and respectful treatment of inmates, And it is his duty to follow (FBOP) rules and policies and to treat all inmates equally. The Defendant "Baugaard" is sued herein both in his official and personal capacity.

10). Defendant, Officer Elliott is an officer at USP McCreary. As an officer he is tasked with overseeing the Security of the inmates. He is Also responsible for the humane and respectful treatment of inmates. It is also his duty to follow (FBOP) rules and

policies. The Defendant, Officer Elliott is sued herein both in his official and personal capacity.

11). Defendant(s), John DOE(S) is employed by the (FBOP) in different capacities; (i.e) medical; security; Administrative. They are being sued herein, both in their official and personal capacity.

12). Defendant, Regional Director is the Director of the mid-Atlantic Region of the (FBOP). As the Director he/she oversees USP Hazelton, USP McCreary, and USP Lee. He/She is responsible for the safety and well being of (FBOP) inmates in the region. He/she is also responsible for for the Administrative (grievance) process that Plaintiff have attempted to participate in. He/she is being sued herein, both in his/her official and personal capacity.

13). The Defendants have acted individually and through the other Agents, officials and Employees of the (FBOP), who bear responsibility for the treatment, care and custody of the Federal prisoners and those who have participated in, and/or have authority for the administrative hearing process that Plaintiff have attempted to participate in as to the claims herein. Through their practices, policies and customs, the Defendants and these other unnamed persons acting on his/her/their behalf in the (FBOP) have acted with malice aforethought and deliberate indifference to the statutory, regulatory and Constitutional rights of the Plaintiff by failing to provide humane conditions of confinement and Adequate medical care to plaintiff.

## JURISDICTION AND VENUE

14). This Court has Jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that it arises under the Constitution and laws of the United States; Bivens, 403 U.S. at 390-97.

15). This Court has venue under 28 U.S.C. 1391(b)(2), in that a substantial part of the events giving rise to the claims made herein (i.e) the denial of medical care took place in this district. Alternatively, this Court has venue under 28 U.S.C. § 1391(b)(3) because the Defendant "Warden" USP Beaumont and some of the John Doe(s) reside here.

## FACTS

16). The Plaintiff incorporate by reference all facts and allegations contained in paragraphs 1-15.

17). At or about 2009 the Plaintiff had surgery on his [right] Knee. Due to complications a second surgery was warranted days later. After the second surgery Plaintiff was fine.

18) At or about ten years later Plaintiff lost sight in his right eye. Prison Medical Authorities couldn't diagnose the problem so they scheduled Plaintiff an eye doctor appointment

19). On the Appointed date the Plaintiff was led out and placed in one of the prisons [new vans];

the van was devoid of windows and places inmates in a dark, tight spot similar to "a coffin". Plaintiff was on DEATH Row at the time and the "coffin van" was too much to deal with mentally. The officers closed the door and waited until Plaintiff screamed and then they opened the door and presented the Plaintiff with a "Refusal" form to sign, stating, "WE KNEW you were going to refuse, EVERYONE we put in this van refuse". Plaintiff went back to his cell and upon talking to psychiatrist was set to be rescheduled with instructions to use a van "with windows".

20). Also, at or about the same time the Plaintiff's left and right KNEE(S) erupted again with toral maniscus'; the pain was excruciating, at times the officers had to use a wheelchair Just to get Plaintiff to the law library. However Plaintiff suffered through the pain because President Donald Trump went on a killing Spree on Federal Death Row and the Plaintiff feared they would kill him rather than spend the money to get his KNEES fixed.

21). In April 2021 the Plaintiff's death sentence was vacated and he was officially sentenced to life. He was then scheduled for appointments pertaining to his KNEES and rescheduled for an EyE doctor Appointment

22) In May 2021 the Plaintiff was transferred to USP Beaumont. Officials at USP Beaumont refused to honor the appointments and refused to even respond to medical requests.

23). Plaintiff filed grievances all to no avail, prison officials refused to respond to the grievance process as well. So in mid 2021 the Plaintiff filed his first claim in this court.

24). The (FBOP) has a systematic pervasive problem with ignoring the law and violating the Constitution, they seem to think that prisons means separate the incarcerated from the laws and the Constitutions protections.

25). When Plaintiff left USP Terre Haute in route to USP Beaumont correctional officers in Terre Haute's Receiving and Discharge stole plaintiff's personal property. Plaintiff wrote a grievance at USP Beaumont imploring the Administration at USP Terre Haute to preserve any and all video footage in R&D for the applicable time.

26). Shortly thereafter officers at USP Beaumont started tampering with Plaintiffs legal mail. Appropriately marked legal mail was being delivered opened and copied; Outgoing legal mail were being hindered by excessive delays; Officers were

reading outgoing legal mail; And presumably throwing legal mail away because it never reached its destignation.

27). At or about mid-August 2021 Plaintiff got a disciplinary write-up for "Refusing to obey An Order". That was the Plaintiff's first write-up in over eight years. A Counselor Bansgaard sanctioned the Plaintiff six months. phone, commissary, email and visit restriction Although the maximum Allowed is 90-days.

28). Plaintiff received Another write-up for "Threatening an officer" and was subsequently locked up in the 'Special Housing Unit' or (SHU). Another officer claimed that the Plaintiff "threatened her". when Plaintiff went to his disciplinary hearing, he explained to the Disciplinary Hearing officer that he asked the male officer for a covid mask for another inmate that was on the phone And the female officer said "Fuck you, I'm not giving you shit." The Plaintiff responded, "I didn't ask you" and "Respectfully. Fuck you too. The Disciplinary Officer Accessed the other inmates phone call And listened to the exchange between the Plaintiff And the female officer After listening to the dispute the (DHO) said, "This isn't a threat. I should throw this shot out Just because

She lied, but since you did cuss her out I'm going to give you ninety days restrictions for insolence."

29). Later that evening the Lieutenant told the Plaintiff to "get ready to go back to population". But because Plaintiff was filing complaints against the prison they retaliated by transferring Plaintiff to a worse prison, far away from home.

30). Plaintiff was sent to Hazelton USP in West Virginia. Plaintiff's attorney's were writing telling the Plaintiff that they were attempting to set-up a legal call, all to no avail. So when Plaintiff went to shower he refused to come out of the shower. An unknown Lieutenant and a strike team gassed the Plaintiff then took him to the SHU, where they wrapped the Plaintiff in chains, refused to decontaminate the Plaintiff and beat him every two hours for ten hours; They knocked half of the Plaintiff's front tooth out, reinjured the Plaintiff's legs and eyes, and left permanent chain marks on the Plaintiff. For the next nine months they beat, harassed, assaulted and threatened the Plaintiff. Plaintiff was on one-Range, dubbed "The Slave Ship". This was the Range where they kept all minority inmates, where they chained them all up and assaulted them. Besides the constant torture, they used

Racism to terrorize the Plaintiff, stating:
"This isn't Terre Haute Nigger". And. "Here Ye,
Here Ye, we've been Authorized to exterminate
all niggers".

31). Plaintiff's Attorney's came to West Virginia
after Another Inmate called and told them what
the officers were doing to the Plaintiff. The
Attorney's documented Plaintiff's injuries and
contacted Congress and other Agencies. Right
before Plaintiff was transferred from USP Hazelton
the Regional Director came. Plaintiff and other
Inmates showed the injuries they'd sustained;
The Regional Director refused to Act to stop
the abuse.

32) Warden John Gilley was sent from USP Hazelton
to USP McCreary in Pine Knot, Kentucky. The new
Warden stopped the abuse and instructed S.I.A.
to photograph Plaintiff and the other Inmates
injuries.

33). Plaintiff was then sent to USP McCreary
where Warden John Gilley was the Warden.
Plaintiff Kept a low profile for nearly a year
and a half.

34). Plaintiff put in to see medical for his
Knees. Medical did an x-ray and concluded
that "it must be Gout". Plaintiff patiently

explained that he'd already had surgery in Terre Haute and if they did a MRI they would see that he had torn meniscus' in both knees." The doctor prescribed a week of Ibuprofen and a nurse notified the Plaintiff days later that his MRI had been denied. Plaintiff followed up with more medical requests as the pain intensified but medical stopped responding to the issue. Plaintiff also wrote grievances, but again, there was no response.

35). At or about January 2024 an Officer Elliott threatened to "plant a knife" on the Plaintiff. Plaintiff immediately called his Attorney's and told them.

36). About a week later Officer Elliott planted a knife on the plaintiff, claiming that while he "was shaking down" he "went through Plaintiff's property and found a knife".

37). Fortunately Plaintiff had called on the telephone and documented the threat the week prior, the Disciplinary Hearing Officer knew it was a set-up and after the FBI refused to prosecute the (DHO) expunged the write-up.

38). The Plaintiff was sent to USP LEE in Jonesville, Virginia. Warden John Gilley is now the Warden there.

39). USP LEE, up under Warden Gilley's tutelage is akin to a torture House; Just Like USP Hazelton and USP McCreary. An officer told us that Warden Gilley teaches classes on "How to break an inmate". mentally, Emotionally and physically. At USP LEE Warden Gilley punishes Everyone for the Actions of one; He doesn't follow the national menu and often feed grown men child portions of food, mostly consisting of bologna; The officers threaten to plant knives and drugs on the inmates and threaten bodily harm; The Administration cemented over the light switches in the cell and cut off all lights After the 9:00 P.M. Count so inmates can't read, write or do legal work; USP LEE is the only FBOP facility with an Early bed time; Warden Gilley implemented a rule where inmates family's and friends can't order them books; (i.e) Amazon, Barnes and nobles, nowhere. Inmates are Allowed to have magazine and newspaper subscriptions, but if an inmate go to the SHU the officers steal the magazines and never give them to the inmate. Plaintiff was never given his purchased magazines for the time he spent in the SHU at no facility where Gilley was the Warden; FBOP facilities open, read and often discard mail, including mail to and from lawyers; mail to and from the Courts; mail to and from the media; Even grievances Addressed to outside Sources. Plaintiff wrote an Original Petition for the

Supreme Court and sent it to his attorney's to make copies. Plaintiff set a self-imposed deadline to file the petition in late August. When the lawyers sent the copies back prison officials Unconstitutionally opened the mail outside of Petitioner's presence and returned it to the lawyer's with a note stating "This is not legal mail."

The lawyer sent it back with a note inside of her own Just in case they Unconstitutionally open it again. The note said, "You don't get to say what is or what isn't legal mail. This is legal mail, it already had a case number". Again Prison officials sent it back to her; this time they claim that they accidentally sent it back. The lawyer returned it again two weeks ago in mid-October 2024 and Plaintiff still haven't received it. Plaintiff went to the mailroom on October 24, 2024 and inquired about the legal mail, an officer sans a name tag stated "You'll get it after the Presidential Election in November."


407. Even though legal mail is appropriately labeled, "Legal Mail Open Only in the Presence of the inmate" the Prison still copy and open the mail outside of the inmates Presence, Just as they did this Order from your Court. (See Attached Order). Prison officials in the mailroom now open and copy legal mail and then send the legal mail to the inmates Counselor and it's up to the Counselor to read it first and

then the Counselor will decide if the inmate can have the legal mail.

41). At or about the beginning of October Plaintiff walked out of the chowhall at breakfast, an inmate informed Plaintiff that the monthly soap and razor allotment was being given out in laundry. Plaintiff turned to go to the laundry and an officer stopped him stating "Where the fuck are you going?!"

Plaintiff said, "I'm going to laundry to get my soap and razors."

The officer said. "No you're not. Take your motherfucking ass back to your Unit."

Plaintiff explained that they usually give soap and razors outside the chowHall door. There was no notice of a change of locations.

The officer pointed back towards the Unit and said "Go back to your unit motherfucker."

The officer wasn't wearing a name tag. Plaintiff asked for his name.

"You don't need to know my name motherfucker", the officer said.

Plaintiff turned to walk away. The officer yelled, "I work in facilities. Come find me motherfucker!"

Plaintiff turned back and calmly said, "I'm just going to write it up".

The officer yelled, "Come here motherfucker!"

Plaintiff walked back. The officer had his fists balled up as if he were going to strike the Plaintiff. This moment, Ms. Mullins and Ms. Lamb were standing

there in shock, looking at the officer like he was crazy.
The officer said, "Give me your ID motherfucker!."
Plaintiff gave him the ID.
"The officer said, " Now leave motherfucker".
Plaintiff walked back to his unit.


42). At or about noon another inmate approached Plaintiff
and told him that the officer's name is "Perkins" and
he carries knives to plant on inmates he don't like.
Plaintiff went to his unit Manager and told him
what happened. Apparently Officer Perkins is known
for what he did to the Plaintiff. The Unit Manager
told the Plaintiff to go to a Mr. Hownshell in R&D,
tell him what happened and he'll give the Plaintiff
a new ID with no charge.


43). Plaintiff then went to his Counselor and asked
for a BP-8 grievance. The Counselor asked 'what for'
and Plaintiff told him.
          "I wouldn't write it up". The Counselor said.
"It's not worth the trouble it will cause you". Then
he said. "But if you're going to write it up anyway
I advise you not to write it up locally, I advise
you to write a Sensitive BP-9 to the region".


44). Plaintiff wrote the Sensitive BP-9 complaining
about the legal mail and other issues along with
the recommendation by the Counselor to write it
Sensitive. Plaintiff sent the BP-9 to the Region via
Certified mail.

45). The Region denied the grievance stating that Plaintiff failed to file locally.

46). As such the defendants engaged in a conspiracy to harm the Plaintiff mentally, emotionally and physically while intentionally, knowingly, deliberately and willingly, with malice aforethought violating the Plaintiff's Constitutional and other rights.

47). Plaintiff incorporate by reference all facts and allegations contained in paragraphs 1-46.

FIRST CLAIM: EIGHTH AMENDMENT VIOLATION-DELIBERATE INDIFFERENCE

48). The Eighth Amendment forbids "deliberate indifference" to "serious medical needs of prisoners". ESTELLE v. Gamble, 429 U.S. 97, 104 (1976), and to a substantial risk of serious harm to an inmate. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

49). The (FBOP) undertakes to provide inmates with medical care that is "presently medically necessary," defined as treatment "without which an inmate could not be maintained... without significant pain or discomfort." Federal Bureau of Prisons, U.S. Dep't of Justice, Program Statement No. 6000.04 (Dec. 15, 1994) ("Health Services Manual"), ch. 1, § 1.

50). Prison officials or their agents violate the Eighth

Amendment if they commit "acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, (1976), this standard has been interpreted as including both and objective and subjective component: "The [plaintiff] must demonstrate (1). that [he] suffered [from] objectively serious medical needs; and (2) that the prison officials actually knew of but deliberately disregarded those needs". Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000). See also Burke v. North Dakota Dept. of Corrections and Rehabilitation, No. 1:12-CV-131, 2013 WL 1164322 (N.D. Feb. 28, 2013).

51). Defendants are not ensuring that Plaintiff receive any medical care. It's been over five years and the pain and suffering have gotten progressively worse. The defendants "guessed" that it "might be gout" and refused to perform an MRI that would have shown conclusively that Mr. Fields is suffering from torn meniscus'. Any qualified doctor will testify to the level of pain the Plaintiff is experiencing and have been experiencing for years due to the Defendants neglect, misdiagnosis and deliberate indifference. The Defendant's failure to provide Mr. Fields with adequate medical treatment and care to stop the pain and suffering violates his Constitutional rights under the Eighth and Fourteenth Amendments. Declaratory and Injunctive relief is required.

52). Plaintiff incorporate by reference all the facts

and Allegations in paragraphs 1-51.

## SECOND CLAIM: EIGHTH AMENDMENT VIOLATION - CRUEL AND UNUSUAL PUNISHMENT

53). The Eighth Amendment, which is applicable through the 14th Amendment, forbids cruel and unusual punishment. SEE U.S. Const. Amend. VIII; *Bass v. Perrin*, 170 F.3d 1312, 1316 (11th Cir. 1999). The Cruel and Unusual punishment standard applies to conditions of a prisoner's confinement. *Chandler v. Crosby*, 379 F.3d 1278, 1283 (11th Cir. 2004). Specifically, the Eighth Amendment prohibits punishments "which are incompatible with the Evolving Standards of decency that mark the progress of a maturing society", or "which involve the unnecessary and wanton infliction of pain". *Estelle v. Gamble*, 429 U.S. 97, 102-103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976).

54). In its prohibition of "Cruel and Unusual Punishments", the Eighth Amendment imposes duties on prison officials to provide "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Further, "[p]rison officials must ensure that inmates receive adequate food, clothing, shelter, and *medical care*". Id. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

55). The Plaintiff was sentenced to a term of imprisonment, not a term of pain and suffering. The type of pain assailing Mr. Fields cannot be manufactured,

any competent physician would have done a MRI to confirm a diagnosis. But because of the defendants deliberate indifference to the Plaintiff's serious medical needs the excruciating pain that Mr. Fields suffers day-to-day constitutes Cruel and Unusual Punishment. This violates the Plaintiff's Constitutional Rights under the Eighth and Fourteenth Amendments. Declaratory and injunctive relief is required.

56). Plaintiff incorporate by reference all the facts and allegations in paragraphs 1-55.

### THIRD CLAIM: FIFTH AMENDMENT VIOLATION-DUE PROCESS

57). The Fifth Amendment prohibits the federal government from depriving a person of life, liberty, or property without Due Process of law. The Constitutional protections Encompassed by the Due Process Clause do not abate at the time of imprisonment." Hudson v. Palmer, 468 u.s. 517, ___, 104 S.Ct. 3194, 3206, 82 L.Ed. 2d 393 (1984) (O'Connor, J. concurring).

58). The Due Process guarantees of the Fifth and Fourteenth Amendments come into play when a constitutionally protected liberty or property interest is at stake. Board of Regents v. Roth, 408 u.s. 564, 577, 33 L.Ed. 2d 548, 92 S.Ct. 2701 (1972).

59). When a prison establishes rules permitting an inmate to purchase books, magazines, commissary,

Art Supplies, A liberty and property interest is created for the inmate. The Theft of those items is an intentional Tort, and "[T]he touchstone of Due Process is protection of the individual against arbitrary action of government." See, e.g., Wolff v. McDonnell, 418 U.S. 539 558 (1974); Fuentes v. Shevin, 407 U.S. 67, 82 (1972) (The procedural due process guarantee protects against government power arbitrarily and oppressively exercised.)

60) THEFT: "The taking of property without the owner's consent". People v. Sims, 29 Ill. App. 3d 815, 331 N.E. 2d 178, 179. "The fraudulent taking of personal property belonging to another, from his possession, or from the possession of some person holding the same for him, without his consent..."

61). The Plaintiff was assured that he would be able to take all of his property to USP Beaumont. However Receiving and Discharge (R+D) staff went through Mr. Fields property and kept over $2000 worth of items, not including legal Documents. This Constitutes "Theft". The same Applies to the magazines that were Stolen At USP Hazelton, USP McCreary and USP Lee. And the Plaintiff's tablet, pictures, shoes and other items that staff stole from USP McCreary. Each prison has A sophisticated Camera system that will Show the property the Plaintiff had and it will further Show the officers Stealing the property. The Defendants failure to provide Due Process violates the Plaintiff's constitutional Rights under the Fifth

and Fourteenth Amendments.

62). Plaintiff incorporate by reference all the facts and Allegations in paragraphs 1-61.

FOURTH CLAIM: FIRST AMENDMENT VIOLATION-ACCESS TO
COURTS AND TAMPERING WITH LEGAL MAIL

63). The right of Access to the Courts derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments. The right for access to the Courts requires that "Adequate, Effective, and meaningful" Access be provided to inmates wishing to challenge their criminal charge, conviction, or conditions of confinement. Bounds v. Smith, 430 U.S. 817, 822 (1977). Prisons officials must "give prisoner's a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts." Id. at 825.

64). A prison facility must ensure that its inmates have "A reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts." Lewis v. Casey, 518 U.S. 343, 351 (1996) (quoting Bounds v. Smith; supra. The tools required to be provided by the Bounds decision are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction

and incarceration. Lewis v. Casey; Supra. "Interference with a prisoner's right to access to the Courts, such as delay, may result in a constitutional deprivation." Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999). Prisoners possess a constitutional right of access to the Courts, including having the "ability... to prepare and transmit a necessary legal document to Court. Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996), quoting Brewer v. Wilkinson, 3 F.3d 816, 821 (5th Cir. 1993). To prevail on a denial-of-access-to-the-Courts claim a litigant must show he is prejudiced by the alleged violation." Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998).

65). Title 42 U.S.C. § 1997 (a) provides that "[a]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal land, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Thus typically speaking, dismissal is required under Section 1997(e)(a) if an inmate has failed to exhaust all available administrative remedies prior to filing suit. See (e.g.), Johnson v. Jones, 340 F.3d 624, 628 (8th Cir. 2003).

66). There are exceptions, however, to the exhaustion requirement; (1) when officials have prevented prisoners from utilizing the grievance procedures; and (2) when the officials themselves fail to comply

with the grievance procedures. Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005). Thus it has been determined that dismissal of a case for failure to exhaust where a plaintiff's attempts to file grievances are significantly thwarted, the court may infer that the administrative process was unavailable; Hanse v. Smith, No. 05-4381-cv-c-alkl, 2006 WL 2135537, *2 (W.D. Mo. July 31, 2006); and "A remedy that prison officials prevent a prisoner from using is not "available" under the statute; Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001).

67). Today, October 28, 2024 at approximately 2:53 P.M. one officer brought legal mail to my door. After Plaintiff signed for the legal mail the officer commenced to reading the documents. He said, "These are transcripts I'm not giving you these". Plaintiff explained that it was not transcripts; And, It say Attorney-Client Privilege thus the officer was in violation for reading it. (See 28 C.F.R. 3 540.18. It states "The warden shall open incoming special mail only in the presence of the inmate for inspection for physical contraband and the qualification of any enclosures as special mail. The correspondence may not be read or copied if the sender is adequately identified on the envelope, and the front of the envelope is marked "Special Mail-Open only in the presence of the inmate".)

68). The document in question is the same document noted supra that was due to be filed August 2024, Thus this constitutes another Constitutional delay;

Christed v. Phillips; supra. It is also a violation of FBOP policy. Furthermore when Prison officials don't respond to grievances the administrative process is not available - see Miller v. Norris; supra. Mr. Fields have filed grievances to no avail. And even when the counselor told the Plaintiff to write a sensitive BP-9 (grievances) to avoid retaliation at the local level the Region refused to acknowledge the threat.

69). When Plaintiff was at USP Hazelton Prison officials thwarted Plaintiff's efforts to respond to his lawsuit in Sherman Lamont Fields v. Donald J. Trump, et al. 1:20-cv-02699-JEB. No. 21-5280. As a direct result the case was dismissed without prejudice and the court refused to reopen it. Thus Plaintiff was actually injured when Prison Officials prevented his receiving notice of a response, resulting in the dismissal of the case and a loss of the right to appeal. See Simkins v. Bruce, 406 F.3d 1239, 1243-44 (10th Cir. 2005).

70). Prisons officials continued reading of Plaintiff's legal papers states a Constitutional claim. Cody v. Weber, 256 F.3d 764, 768-69 (8th Cir. 2001). "Constitutional rights don't come and go with the weather." Henderson v. DeRobertis, 940 F.2d 1055, 1059 (7th Cir. 1991) FBOP officials have committed every single violation imaginable when it comes to Petitioner's right to receive Confidential legal mail and his right to access the court. Thus Mr. Fields is entitled to Judicial relief for a violation of his First Amendment rights aside from any physical,

mental, or emotional injury he may have sustained. Rowe v. Shake, 196 F.3d 778, 781-82 (7th Cir. 1999)

71). Plaintiff incorporate by reference all the facts and allegations in paragraphs 1-70.

FIFTH CLAIM: EIGHTH AMENDMENT VIOLATION-
EXCESSIVE FORCE - HUMANE CONDITIONS

72) The use of force qualifies as excessive for the purpose of Eighth Amendment and due process Jurisprudence when it entails the "unnecessary and wanton infliction of pain.'" Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) (quoting Ingraham v. Wright, 430 U.S. 651, 670, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977)). The Plaintiff was pepper sprayed, wrapped in chains that were stretched tight and padlocked behind his back, and beat and assaulted every two hours for ten hours. This resulted in the officers knocking half of Mr. Fields front tooth out, torturing him when they refused to wash the pepper spray from his person and eyes, Further injuring his eye and knees, leaving bruises from where the officers repeatedly struck plaintiff with their fists. And left permanent chain marks on plaintiff's body.

It is well established that overly tight handcuffing can constitute excessive force. Wall v. County of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004). An unknown officer claimed that Fields said, "If you try to cuff me up

"I'm going to fight back". This is why Fields was pepper sprayed and beaten.

Where, as here, force is employed in the course of resolving "a disturbance", the pertinent inquiry is "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, supra, at 320-21, 106 S.Ct. at 1085 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) (Friendly, J.)) Factors relevant to that inquiry include whether officials perceived a threat to their safety and the safety of other inmates, whether there was a genuine need for the application of force, whether the force used was commensurate with the need for force, the extent of any injury inflicted, and whatever efforts the officers made to temper the severity of the force used. Id. at 321, 106 S.Ct. at 1085. See Also Forrest v. Prine, 620 F.3d 739, 744-45 (7th Cir. 2010); Lewis v. Downey, 581 F.3d 467, 475-77 (7th Cir. 2009), Mr. Fields was alone in a 4x4 shower stall that was locked so there was no threat to other inmates or officers, and there was no genuine need for force. The force used (i.e) Excessively tight restraints, pepper spray, punching and beating for hours on end, broken teeth, etcetera was not commensurate with any need for force. "When an [inmate] surrenders and is rendered helpless...a refusal without cause to alleviate [a weapon's] harmful effects constitutes excessive force." Lalonde v. County of Riverside, 204 F.3d 947, 961 (9th Cir. 2000) (holding that excessive force

was used when. Plaintiff was left with pepper spray
on his face and in his eyes for 20-30 minutes).
"Keeping prisoner restrained and unable to wash
off mace for 8-hours may have violated the 8th
Amendment since he had done nothing threatening
during that period." Williams v. Benjamin, 77 F.3d
756, 764-66 (4th Cir. 1996). Even the (DHO) officer
Acknowledged that Mr. Fields never threatened the
officer; but to stand with his officer he dropped
the Shot down to "Something Like a threat". There
is no doubt that the force used against Mr. Fields
was maliciously and sadistically for the very purpose
of causing harm. SEE Hudson v. McMillian, 503 U.S.
1, 5, 117 L.Ed. 2d 156, 112 S.Ct. 995 (1992). When the
officers stated "This isn't Terre Haute Nigger", and
said "Here Ye, Here Ye, We've been Authorized to
Exterminate all niggers". And then placed Plaintiff
on the Range dubbed "The Slave Ship" it went
way beyond Excessive force and Assault and turned
the incident into a hate crime. Plaintiff wrote
grievances asking prison officials to preserve All
Audio And Video pertaining to the incident(s). And
Accumulated a list of over twenty other inmates
that suffered the same fate as Mr. Fields, or worse.


73). Plaintiff incorporate by reference all the facts
and Allegations in paragraphs 1-72


SIXTH CLAIM: FIFTH AND FOURTEENTH AMENDMENT-
SUBSTANTIVE DUE PROCESS VIOLATION

74). When a prisoner enters the Warden's custody, [it] does not strip bare his right to be free of the arbitrary and purposeless use of Authority. Wolff v. McDonnell, 418 U.S. 539, 555, 41 L.Ed. 2d 935, 94 S.Ct. (1974).

75). Plaintiff incorporate by reference all the facts and allegations in paragraphs 1-74.

SEVENTH CLAIM - EIGHTH AMENDMENT

76). Prison officials can effect cruel and unusual Punishment when they deliberately abuse their power, without regard to legitimate punitive purposes in a calculated effort to harass inmates. Hudson, 468 u.s. at 530; Johnson v. Phelan, 69 F.3d 144, 147 (7th Cir. 1995), cert. denied, Johnson v. Sheahan, 136 L.Ed. 2d 397, 117 S.Ct. 506 (1996); Williams v. Boles, 841 F.2d 181, 183 (7th Cir. 1988). A frame-up or malicious prosecution is in and of itself an inchoate breach of substantive due process, which matured into a viable claim.

77). 1) When officer Elliot threatened to "plant a Knife" on the Plaintiff and then framed the Plaintiff a week later for "possessing a Knife"; (2). When officer Bangaard took his harassment to another level and excessively punished Mr. Fields; (3) When the Female officer in Beaumont wrote Fields a bogus threatening an officer shot; And when the officers assaulted Fields when the unknown officer said

that Fields said "If you try to cuff me up I'll fight back".

18). The fact that the write-ups were expunged or dropped down to a minor infraction doesn't cure the harm. Fields still spent about 16-months in solitary confinement; his liberty interest(s) of commissary, visits phone privileges and email were taken away; He was beaten and assaulted; books, magazines and other property were stolen; Mr. Fields was subjected to racial slurs and other abusive language; And he was transferred far away from his family.

The courts have held that "a punishment for no offense at all is, as a matter of mathematics, disproportionate." See Harmelin v. Michigan, 501 U.S. 957, 115 L.Ed. 2d 836, 111 S.Ct. 2680 (1991); United States v. Contreras, 937 F.2d 1191, 1195 n.3, (7th Cir. 1991). Fields stayed in solitary confinement four months without any of his liberty interest when Elliott planted the knife on plaintiff. "Changes in prison conditions resulting from discipline imposed without appropriate due process that constitute "atypical" and "significant" hardships sufficient to give rise to the loss of a liberty interest are actionable under § 1983 (quoting Sandin, 515 U.S. at 484) Petitioner was also subject to prosecution but the FBI declined. The courts have already affirmed a jury verdict against an officer that fabricated charges against a plaintiff as officer Elliott did here. See Surprenant v. Rivas, 424 F.3d 5, 14-15 (1st Cir. 2005), thus Mr. Fields is on firm footing.

79). Plaintiff incorporate by reference all the facts and allegations in paragraphs 1-78.

EIGHTH CLAIM- <u>RETALIATORY TRANSFER</u>

80) Generally a prisoner enjoys no constitutional right to remain in a particular institution..." <u>Goff v. Burton</u>, 7 F. 3d 734, 737 (8th Cir. 1993) (quoting <u>Murphy v. Missouri Dep't of Correction</u>, 769 F. 2d 502, 503 (8th Cir. 1985)), cert. denied, 114 S. Ct. 2684 (1994). In fact, prison administrators may ordinarily transfer a prisoner "for whatever reason or for no reason at all..." Id. (quoting <u>Olim v. Wakinekona</u>, 461 U.S. 238, 250, 75 L.Ed. 2d 813, 103 S. Ct. 1741 (1983)). Still, these precepts are limited by the prohibition against transferring a prisoner in retaliation for the inmate's exercise of a constitutional right. n4 Id. (citing <u>Ponchik v. Bogan</u>, 929 F. 2d 419, 420 (8th Cir. 1991)). When Plaintiff was transferred from USP Beaumont to the more distant and violent Hazelton S.I.S. at USP Beaumont alluded to the fact that the transfer was due to Fields' complaints about the prison.

81). "An Act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution. See <u>Mt. Health City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 283-84, 50 L.Ed. 2d 471, 97 S.Ct. 568 (1977); <u>Matzker v. Herr</u>, 748 F.2d 1142, 1150 (7th Cir. 1984), limited on other grounds, <u>Salazar v. City of Chicago</u>, 940 F.2d 233, 240-41 (7th Cir. 1991). Prisoners have a

Constitutional right of Access to the Courts that, by necessity, includes the right to pursue the administrative remedies that must be exhausted before a prisoner can seek relief in Court. See _Preiser_, 411 U.S. At 483. This, a prison official may not retaliate Against a prisoner because that prisoner filed a grievance. See _Babcock_, 102 F.3d At 274-75; _Black v. Lane_, 22 F.3d 1395 At 1402-03; See Also _Higgason_, 83 F.3d At 810 (retaliation for filing lawsuit); _Murphy v. Lane_, 833 F.2d 106, 108-09 (7th Cir. 1987) (per curiam) (same). To state a claim for retaliatory treatment, a complaint need only Allege a chronology of events from which retaliation may be inferred. _Black_, 22 F.3d At 1399 (citations and internal quotation marks omitted) Excluding the statement S.I.S. made About the Plaintiff complaining; Plaintiff complained About his knees and eye And when prison officials failed to respond to his grievances, he filed a lawsuit; Plaintiff complained About Counselor Bonigard, harassment and the officers tampering with his legal mail, and when Prison officials failed to respond to his grievances, he filed a lawsuit; Then when Plaintiff was written a bogus 'threatening An officer' shot. Plaintiff filed another grievance, to no avail. This is when Prison officials dropped the shot, yet transferred the Plaintiff. This chronology of events is self explanatory; it's retaliation. Plaintiff labeled A Security threat and the loss of personal property satisfies the "ordinary firmness" standard. _Sprayette v. Haffner_, 181 F.Supp. 2d 736

742-45 (n.D. Mich. 2001). It's because of this retaliatory transfer that Everything that happened to Plaintiff at USP Hazelton, USP McCreary and USP LEE is also Attributed to USP Beaumont.

82) Plaintiff Incorporate by reference all the facts and allegations in paragraphs 1-81

NINTH CLAIM: CONSPIRACY AND AIDING AND ABETTING

83). The Plaintiff avers that the defendants, Acting under color of Federal law, At all times relevant, Engaged in a criminal and Civil Conspiracy to deprive him of his right to access the Court(s); his right to be free of arbitrary Authority; his right to due process; his right to be free from Cruel and Unusual punishment; his right to medical attention ...

84). Clearly Established Federal Law defines the Elements of Conspiracy as (1) An agreement between two or more persons; (2) The object of which is to do an unlawful act or a lawful act by unlawful means (A formal Agreement need not be demonstrated as an agreement may be demonstrated by Circumstantial Evidence of the meeting of the minds). United States v. Moore, 525 F.3d 1033 (4th Cir. 2008); United States v. Peccel, 553 F.3d 903 (Dec. 23, 2008). The Conspiracy started at the formulation of the FBOP, but for purposes of this lawsuit the Plaintiff fell victim to the conspirators at or about mid-2021 in USP Beaumont.

85). The Director of the FBOP is responsible for the actions of "An" FBOP employees, for it is through him/her that policymaking decisions are employed. Thus when FBOP officials violate a Prisoner's rights it is by and through the systematic teachings that a Jury can infer the existence of an agreement and/or "a meeting of the minds" to violate the Plaintiff's rights. Peccel; Supra.

86). As we have here "A conspiracy may be a continuing one; Actors may drop out, and others drop in; the details of the operation may change from time to time; the members need not know each other or the part played by others; a member need not know all the details of the plan or the operations; he must, however, know the purpose of the conspiracy and agree to become a party to a plan to effectuate that purpose." Craig v. United States, C.C.A. Cal., 81 F.2d 816, 822 Through the FBOP teachings Each defendant knew the purpose of the conspiracy and agreed to become a party to effectuate that purpose, thus because the Original Complaint was filed in the Eastern District of Texas-Beaumont, all actions pertaining to the conspiracy coalesce in this Jurisdiction.

87) Plaintiff incorporate by reference all the facts and allegations in paragraphs 1-86

INJURIES TO PLAINTIFF

88). Because of the wrongful acts of the Defendants and those under their supervision in the FBOP, the Plaintiff has been caused and continues to suffer from the following injuries, among others:

A). Physical Injuries, including those which are continuing and severe.

B). Emotional and psychological injuries, including those which are continuing and severe.

C). The theft of personal property, at a total estimated value of $3,000.00

89). At all times herein the Defendant, as Director of the FBOP, overseeing the entire Federal Prison System, deprived the Plaintiff of rights secured by laws, regulations, the United States Constitution, and the applicable common law of the United States.

90). As a proximate result of the aforementioned, the Defendant, and the wardens, employees, personnel, staff and agents of the FBOP, under the Defendant's control and supervision undertook the adverse actions against Mr. Fields as described and set forth herein.

91). As a further proximate result Mr. Fields' rights have been violated and he is entitled to relief and

damages pursuant to Bivens v. Six Unknown named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) Mr. Fields is entitled to Declaratory, and injunctive relief.

92). Plaintiff incorporate by reference all the facts and allegations in paragraphs 1-91

## RELIEF REQUESTED

1). Issue a declaration that the Defendant's acts and omissions as set forth above have violated, and continue to violate the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

2). Issue a permanent injunction directing Defendant's to no longer deny Mr. Fields access to his lawyers and the Courts.

3). Issue a permanent injunction directing Defendants to stop tampering with Plaintiff's legal mail.

4). Issue a permanent injunction directing Defendants to no longer deny Plaintiff medical care.

5). Grant monetary damages and an award of $25,000,000.00 (Twenty five Million dollars)

6). Grant all relief requested in the Original Complaint.

7). Grant all relief requested in Sherman Lamont Fields v. Donald J. Trump in the District of Columbia that was dismissed due to the Defendants tampering with Plaintiff's legal mail.

8). ISSUE A permanent injunction directing Defendants (and all Employees of the FBOP) to wear Body Cameras at work.

9). Grant to Mr. Fields any other relief that this Court may deem Just and proper.

Respectfully Submitted

Sherman Fields
#75651-180
USP LEE
P.O. Box 305
Jonesville, VA 24263

Sherman Lamont Fields  #15651-180
USP Lee
PO Box 305
Jonesville, VA 24263          1:21cv464

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| SHERMAN LAMONT FIELDS | § | |
| VS. | § | CIVIL ACTION NO. 1:21cv464 |
| DIRECTOR FEDERAL BUREAU OF PRISONS, ET AL. | § | |

## ORDER

Pending before the court is plaintiff's motion for leave to file an amended complaint (ECF No. 33).  Plaintiff's motion was filed before the defendants have been served.

FED. R. CIV. P. 15(a) provides in pertinent part:

(1) ***Amending as a Matter of Course***.  A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) ***Other Amendments***.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

As recited above, plaintiff's motion was filed before the defendants have been served.

Accordingly, after due consideration, the court is of the opinion that the motion should be granted.

It is therefore

**ORDERED** that plaintiff's motion for leave to file an amended complaint is **GRANTED**.

SIGNED this 27th day of August, 2024.

Zack Hawthorn
United States Magistrate Judge

CLERK
UNITED STATES DISTRICT COURT
300 WILLOW STREET, SUITE 104
BEAUMONT, TEXAS 77701-2217

OFFICIAL BUSINESS

US POSTAGE PITNEY BOWES

ZIP 77701 $ 000.69⁰
02 4W
0000362470 AUG 28 2024

HOUSTON TX RPDC 770

28 AUG 2024 PM 3 L

**LEGAL MAIL**
OPEN ONLY IN THE
PRESENCE OF THE INMATE

Sherman Lamont Fields  #15651-180
USP Lee
PO Box 305
Jonesville, VA 24263

1:21cv464

24263-030505



SHERMAN FIELDS
#156651
NSP I
P.O. Box 385
Jonesville, VA 24263

CERTIFIED MAIL

9589 0710 5270 1969 6846 04

To: The Clerk
Jack Brooks Federal Building
and United States Courthouse
300 Willow Street
Beaumont, Texas 77701

CLERK, U.S. DISTRICT COURT
RECEIVED
NOV 07 2024
EASTERN DISTRICT OF TEXAS
BEAUMONT, TEXAS

US Certified Mail
Special Mail